**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | : | |
| CONSOLIDATED HVAC, INC. d/b/a | : | |
| CATONS PLUMBING, HEATING & | : | |
| AIR CONDITIONING | : | |
| | : | |
| v. | : | Civil No. CCB-04-2741 |
| | : | |
| ALL STATE PLUMBING, INC. | : | |
| ALL STATE PLUMBING, HEATING & | : | |
| COOLING, INC., AND WAYNE E. | : | |
| GARRITY d/b/a CATON S PLUMBING | : | |
| | : | |

**MEMORANDUM**

Plaintiff Consolidated HVAC, Inc. d/b/a Catons Plumbing, Heating & Air Conditioning

("Consolidated") filed a motion asking this court to find defendants All State Plumbing, Inc., All

State Plumbing, Heating & Cooling, Inc., and Wayne E. Garrity d/b/a Caton S Plumbing

(collectively referred to as "All State") in contempt of the court's Preliminary Injunction dated

September 9, 2004 and Order and Final Judgment dated December 9, 2004.  Consolidated seeks

injunctive relief, actual damages, and attorney fees.  In addition, Consolidated asks the court to

impose criminal sanctions on All State for its disregard of the court's Final Order and Judgment

in this case.  This matter has been fully briefed and no hearing is necessary.  Local Rule 105.6.

For the reasons that follow, Consolidated's motion will be granted in part and denied in part.

**BACKGROUND**

In August 2004, Consolidated filed a complaint against All State alleging false

designation of origin, false and misleading representation of fact, unfair competition and passing

off, and trade name infringement.  The allegations were based on All State's unauthorized use of

the Caton S Plumbing designation in at least four telephone directories in the Baltimore area.

Consolidated alleged that the unauthorized use constituted, among other things, a false

designation of origin in violation of 15 U.S.C. § 1125(a).

Upon Consolidated's motion, the court entered a Temporary Restraining Order and a

Preliminary Injunction.  All State failed to answer the complaint.  Hence, upon Consolidated's

motion, the court held the defendants in default and entered an Order and Final Judgment against

the defendants on all of Consolidated's claims.  To be more precise, the Order and Final

Judgment prohibited All State from:

a.      Any and all use of the term Caton S, or any colorable imitation of the Catons

service mark, in connection with providing plumbing, heating, or cooling

services;

b.      Representing or passing off by words or implication that they, and/or any

company with which they are involved, are authorized, associated with,

sponsored by, or otherwise permitted by Consolidated to conduct any work for

customers seeking the services of Catons; and

c.      initiating or obtaining any telephone directory or database listing or renewing an

existing telephone director listing or directory assistance database using Caton S

or any colorable imitation of the Caton service mark.

Despite the court's Order, however, All State continues to secure listings under the Caton

S designation – albeit under a different telephone number -- in various editions of the 2006

Verizon Yellow Pages, including the Baltimore City Edition, the Baltimore Suburban East

Edition, and the Baltimore Suburban West Edition.  The Verizon Yellow Pages were publicly

distributed in March 2006.  All State also secured listings in the Yellow Book directories,
including the Metropolitan Baltimore Edition, the Baltimore East Edition, and the Baltimore
West Edition.  The Yellow Book directories were publicly distributed in November 2005.  Each
page from the different telephone books includes numerous listings for Catons Plumbing,
Heating & Air Conditioning, which are Consolidated's authorized listings.  However, the Caton
S listing appears before Consolidated's listings in each directory.

　　　　All State, moreover, has not confined the Caton S listings to physical telephone
directories.  To the contrary, All State also has secured a Caton S listing in Verizon's Internet-
based telephone directory, which is available at www.superpages.com.  A search at
superpages.com for the business name "Caton" in the Baltimore area generated a listing for
Caton S with the telephone number (410) 788-6700.  When a user clicks on the "business
profile" link, the web site generates another page with the heading "Additional Information," and
this page lists the name All State Plumbing, Heating & Cooling.  Other Internet-based telephone
directories – including www.infospace.com, www.anywho.com, and www.dogpile.com – also
include Caton S listings.  In each instance, the directory provides the telephone number (410)
788-6700 for the Caton S listing.

　　　　Consolidated asserts that these listings violate the express terms of the court's Order and
Final Judgment, which permanently enjoined All State from initiating or obtaining any telephone
directory or database listing using the Caton S designation or any colorable imitation of the
Catons service mark.  Accordingly, Consolidated asks the court to find All State in contempt.

**ANALYSIS**

At the outset, it is important to distinguish civil and criminal contempt.  The Fourth

Circuit has stated: "When the nature of the relief and the purpose for which the contempt

sanction is imposed is remedial and intended to coerce the contemnor into compliance with court

orders or to compensate the complainant for losses sustained, the contempt is civil; if, on the

other hand, the relief seeks to vindicate the authority of the court by punishing the contemnor

and deterring future litigants' misconduct, the contempt is criminal." *Buffington v. Baltimore

County*, 913 F.2d 113, 133 (4th Cir. 1990); *see also Hicks v. Feiock*, 485 U.S. 624, 631 (1988).

The same conduct can nonetheless give rise to both civil and criminal contempt, "justify[ing] a

court in resorting to coercive and to punitive measures." *United States v. United Mine Workers

of America*, 330 U.S. 258, 299 (1947).

    1.     Civil Contempt

To establish civil contempt, the movant must show the following elements by clear and

convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or
> constructive knowledge;
> (2)...that the decree was in the movant's "favor";
> (3)...that the alleged contemnor by its conduct violated the terms of the decree,
> and had knowledge (at least constructive knowledge) of such violations; and
> (4)...that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (quoting *Colonial Williamsburg

Found. v. The Kittinger Co.*, 792 F.Supp. 1397, 1405-06 (E.D.Va. 1992), *aff'd*, 38 F.3d 133, 136

(4th Cir. 1994).  Willfulness is not an element, *McComb v. Jacksonville Paper Co.*, 336 U.S.

187, 191 (1949), but the order must be clear, specific, and unambiguous.  *In re General Motors

Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (the order must "set forth in specific detail an

unequivocal command") (citation omitted).

Consolidated can satisfy the required elements for civil contempt.  First, All State had actual knowledge of the court's Order and Final Judgment.  All State concedes this fact when it asserts that it asked the telephone company to redirect calls from All State's "Caton S" listing to Consolidated, and not to renew any directory listings for Caton S Plumbing, as required by the court's Preliminary Injunction and Final Order and Judgement.  *See* Def. Resp. 1.

Second, the court's Orders were in Consolidated's favor, as the court found All State to be in default and ruled against the defendants on all of Consolidated's claims.

Third, All State knowingly violated the court's Preliminary Injunction.  All State alleges that it complied with the court's instructions by implementing a telephone intercept that redirected all incoming calls to the "Caton S" listing to one of Catons' telephone numbers serving the Greater Baltimore area.  Consolidated, however, has provided a signed declaration from its counsel asserting that it was Consolidated, not All State, which contacted Verizon to implement the telephone intercept.  *See* Pl. Reply, Ex. 1 (Declaration of P. Andrew Blatt). Although the Preliminary Injunction was issued on September 9, 2004, as of September 21, 2004, All State had not contacted Verizon to implement the intercept.  *See id.*  Consolidated consequently took matters into its own hands and contacted in-house counsel for Verizon asking for assistance in implementing the telephone intercept.  *See id.*  Verizon agreed, on two conditions.  First, Consolidated was forced to pay for the intercept.  Second, Verizon required Consolidated to sign an Indemnity Agreement.  Despite Consolidated's prompt payment and signature, however, it still took Verizon until November 17, 2004 to implement the intercept. *See id.*  At no time during this period did anyone at Verizon notify Consolidated that All State

had contacted Verizon regarding the telephone intercept, and All State offers no evidence that it did, in fact, contact Verizon.  *See id.*  If, by contrast, Consolidated had complied with the Preliminary Injunction, the intercept would have been implemented almost immediately because with All State's consent, Verizon would not have had to clear the intercept through its legal department.  In addition, All State, not Consolidated, should have paid for the intercept pursuant to the express terms of the Preliminary Injunction.

Consolidated also alleges that All State did not contact the telephone company to terminate the Caton S Plumbing directory listing.  The Preliminary Injunction required All State to contact Verizon by at least September 17, 2004 to cancel the "Caton S Plumbing" listing, and to provide Consolidated's counsel with written confirmation of the cancellation by September 20, 2004.  Consolidated never received this confirmation from All State.  Accordingly, it is no surprise that the "Caton S Plumbing" listing appeared in several 2006 telephone directories.

All State's only defense is that the "Caton S" listings are the result of innocent error, inadvertence, or misunderstanding.  Def. Resp. at 2.  All State, moreover, argues that the listings are harmless because they are included in the white pages of each directory, where "potential customers seeking plumbing services will not likely come across the purportedly offensive listing."  *Id.*  The court's Orders, however, expressly state that All State is enjoined from using the term Caton S or any colorable imitation of the Catons service mark.  In addition, the court's Orders enjoined the defendants from representing or passing off by words or implication that they are authorized, associated with, sponsored by, or otherwise permitted by Consolidated to conduct any work for customers seeking the services of Catons.  The terms of the Orders do not provide the defendants with an exception to use Caton S in the white pages portion of the

directory.  As such, the "Caton S" listings in the Verizon Yellow Pages and Yellow Book

directories violate the court's Orders.

All State also argues that it did not have knowledge of the new "Caton S" directory

listings, because they were the result of innocent error, inadvertence, or mistake.  Def. Resp. 2.

This argument, however, is belied by the fact that the new "Caton S" listings involve an entirely

new telephone number, *i.e.,* (410) 788-6700.  In the original action, "Caton S Plumbing" was

under a different telephone number, *i.e.,* (410) 636-3200.  It is hard to believe that Verizon

would have created a new listing, with an entirely new telephone number, without the permission

of All State.  The logical conclusion is that All State contacted Verizon to request the new

"Caton S" listing.  Likewise, in Verizon's Internet-based telephone directory, the listing for

"Caton S" links "Caton S" to All State Plumbing, Heating & Cooling.   This, too, cannot be the

result of innocent error, inadvertence, or misunderstanding.  To the contrary, the only logical

explanation is that All State once again requested the "Caton S" listing in an effort to capitalize

on Consolidated's trade name.

All State's only evidentiary support for its defense of innocent error, inadvertence, or

mistake is the Declaration of Wayne E. Garrity, a named defendant and an officer of All State

Plumbing.  The court gives no weight to this declaration, because it is directly contrary to

overwhelming evidence that All State did not comply with the court's Orders; with regard to the

telephone intercept, it appears patently false.  Indeed, if All State truly had tried to implement the

telephone intercept and cancel the "Caton S" directory listings, it should have some

documentation from Verizon.  No such documentation has been presented to the court.

Finally, Consolidated can show that it suffered harm as a result of All State's non-

compliance with the court's Orders.  According to Consolidated, the "Caton S" listings directly

impact Consolidated's business.  Because the "S" is separated from the word "Caton," the

"Caton S" listing appears alphabetically before or above the authorized Catons listings.  Thus, if

a customer is looking alphabetically for the real Catons Plumbing, Heating & Air Conditioning,

that customer will run across the "Caton S" listing first and will likely stop scanning downward

toward the authorized listings.  When the telephone number (410) 788-6700 is dialed, however,

the person answering the phone answers "All State Plumbing," which is the defendant's

business.  As a result of the Caton S listing, Consolidated loses the opportunity to provide

plumbing, heating, and air conditioning services to the customer.

Consolidated argues that All State's new "Caton S" listings represent false designation of

origin, in violation of 15 U.S.C. § 1125(a).  The Order and Final Judgment held for Consolidated

on all its claims, including Count I of the Complaint for false designation of origin under 15

U.S.C. § 1125(a).  Consolidated asserts, and the court agrees, that the new "Caton S" listing also

represents false designation of origin under 15 U.S.C. § 1125(a).  As such, Consolidated argues

that it is entitled, as a matter of law, to treble damages, attorney fees, and costs pursuant to 15

U.S.C. 1117(a), which states,

> When a violation of any right of the registrant of a mark registered in the Patent
> and Trademark Office or a violation under section 1125(a) of this title, ... shall
> have been established in any civil action arising under this chapter, the plaintiff
> shall be entitled ... to recover (1) defendant's profit; (2) any damages sustained by
> the plaintiff, and (3) the costs of the action....

The Fourth Circuit, moreover, has emphasized that district courts have "a great deal of

discretion... in fashioning a remedy" under this provision.  *Larsen v. Terk Technologies Corp.,*

151 F.3d 140, 149-50 (4th Cir. 1998).

Consolidated seeks damages based on the revenue it has lost as a result of the new "Caton S" listings.  Consolidated proposes that the court calculate its revenue as follows.  Once the telephone intercept was put in place, Consolidated began tracking the number of calls that were redirected from telephone number (410) 636-3200 (*i.e.,* the number associated with the "Caton S" listing) to Consolidated's own telephone number.  From December 2004 through April 2006, Consolidated received 1,925 redirected calls, representing approximately 113 calls per month.  Next, Consolidated calculated the sales revenue it earns per call by dividing its total sales revenue by the number of incoming calls.  For the period April 2005 through April 2006, Consolidated calculated the sales revenue per phone call to be approximately $85.  Using this approach, Consolidated estimated the amount of revenue it lost as a result of All State's "new" Caton S listings.  The Yellow Book directories with the "new" Caton S listing under (410) 788-6700 were publicly distributed in November 2005.  Assuming that a new telephone intercept would be established by June 2006, Consolidated will have lost approximately 800 phone calls (113 calls per months times 7 months) to the telephone number (410) 788-6700 over that 10-month period.  Accordingly, using this methodology, Consolidated would be expected to lose approximately $68,000 ($85 per call times 800 calls) in sales revenue as a result of All State's "new" Caton's listings. The court believes this is a reasonable approach, and will use it to calculate Consolidated's damages.

Under § 1117(a), the court, in assessing damages, also "may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."  Consolidated has requested treble damages in accordance with this provision.  It is apparent that All State obtained the new Caton S listings with full

knowledge that those listings would violate not only Consolidated's right in the Catons service

mark but also this court's Orders.  Indeed, as discussed above, All State's defense that the Caton

S directory listings were not removed from the directories based on innocent error, inadvertence,

or mistake holds no weight, as the new Caton S listings use a new telephone number.  Hence,

because All State intentionally and willfully infringed upon Consolidated's trademark, the court

will double Consolidated's damages and award $136,000.[1]

Consolidated also seeks its attorneys fees and costs associated with bringing this

contempt motion. "[I]n exceptional cases," § 1117(a) permits the award of "reasonable attorney

fees to the prevailing party."   The Fourth Circuit has recognized that "exceptional cases" are

those in which "the defendant's conduct was malicious, fraudulent, willful or deliberate in

nature."  *Retail Services Inc.v . Freebies Publishing,* 364 F.3d 535, 550 (4th Cir. 2004).  A

prevailing plaintiff seeking attorney fees also must demonstrate ""that the defendant acted in bad

faith."" *Id.,* (quoting *Scotch Whiskey Ass'n v. Majestic Distilling Co.,* 958 F.2d 594, 599 (4th Cir.

1992)).  As discussed above, All State willfully and deliberately obtained numerous Caton S

directory listings, despite the clear and unambiguous language of the court's Order and Final

Judgment.  All State's actions were deliberate and constitute bad faith.  Accordingly, the court

finds this to be an exceptional case and will award Consolidated its attorney fees and costs.[2]

2.        Criminal Contempt

---

[1] Taking into account the unavoidable imprecision of the calculation of actual damages,
the court finds that doubling, rather than trebling, those damages is appropriate.

[2] The Order and Final Judgment also found that this was an exceptional case, based on
the fact that All State had willfully evaded service, and therefore awarded attorneys' fees and
costs to Consolidated.

In addition to seeking monetary and injunctive relief, Consolidated also asks the court to impose sanctions for criminal contempt because "it is likely that the defendants will continue to infringe Consolidated's rights and violate this court's orders." Pl. Mem. 9. The court denies this request for the following reasons.

The Supreme court has held that "[c]riminal contempt is a crime in the ordinary sense," *Bloom v. Illinois*, 391 U.S. 194, 201 (1968); thus, "criminal contempt sanctions are entitled to full criminal process." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827 n.2 (1994). Accordingly, Fed.R.Crim.P. 42(a) provides several procedural safeguards for cases of "indirect" contempt, or contempt that takes place outside the presence of the court.[3] The alleged contemnor must receive notice that states the essential facts constituting the charge and allows reasonable time to prepare a defense. Rule 42(a)(1). The court must initially request that a government attorney prosecute the case, unless the interest of justice requires that another attorney be appointed as prosecutor. Rule 42(a)(2); *see also U.S. v. Neal*, 101 F.3d 993, 995 (4th Cir. 1996) (reversing criminal contempt conviction, in case predating 2002 addition of this requirement, because district court committed plain error in failing to refer charge to the U.S. Attorney or other appropriate prosecutor). Opposing counsel in a civil case should not serve as such an independent prosecutor, absent special circumstances. *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 802 (1987). The defendant, moreover, is entitled to a jury trial "in any case in which federal law so provides and must be released or detained as Rule 46 provides." Rule 46(a)(3); *see also Bagwell*, 512 U.S. at 826-27 (holding that a contemnor is entitled to a jury trial "for 'serious' criminal contempts involving imprisonment of more than six

---

[3] Rule 42(b), on the other hand, allows for summary punishment of "direct" contempt.

months.").

In other words, this court could not impose criminal sanctions on All State, even if such sanctions were appropriate, because "indirect contempt may never be punished summarily." *Neal,* 101 F.3d at 997.  Where, as here, "the contumacious conduct at issue occurs out of the presence of the court or does not interfere with an ongoing proceeding immediately before the court, the inherent contempt power does not permit a judge to dispense with a prosecutor altogether and fill the role himself." *Id.* at 997-98.  At most, the court can refer this matter to the U.S. Attorney's Office for investigation and possible prosecution.

The court declines to make this referral.  Courts are directed to employ civil contempt in preference to criminal contempt to vindicate their authority.  Indeed, the Supreme court has held that district courts should employ the "least power possible" to obtain compliance with their orders.  *Shillitani v. United States,* 384 U.S. 364, 371 (1966).  As such, where it appears that civil contempt will coerce compliance, civil contempt should be employed.  The court expects that All State will comply with its orders in the future, in light of the fact that the court has doubled the damages and awarded attorney fees to Consolidated.  If, however, these civil contempt remedies are not successful, the court may reconsider its decision not to refer criminal contempt charges against All State.

A separate Order follows.


 August 30, 2006                                        /s                           
Date                                     Catherine C. Blake
                                         United States District Judge

12